Dylan A. Eaton, ISB #7686
Email: DEaton@parsonsbehle.com
Bryce Jensen, ISB #10324
Email: BJensen@parsonsbehle.com
Parsons, Behle & Latimer
800 W. Main Street, Suite 1300
Boise, Idaho 83702
Telephone:    (208) 562-4900
Facsimile:    (208) 562-4901

Counsel for Defendants Corizon, LLC, Christian Gelok, Michael Grace, Ryan Valley and Aaron Hofer

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ANDY GALLEGOS,<br><br>　　　　Plaintiff,<br><br>v.<br><br>CORIZON LLC, DANIEL DELLWO, CHRISTIAN GELOK, JAN DRAKE, MICHAEL GRACE, RYAN VALLEY, AARON HOFER, ALYSSA TURPIN, KELLY LARSON, WILLIAM POULSON, MURRAY YOUNG, DAVID AGLER, and RONA SIEGERT, in their individual and official capacities,<br><br>　　　　Defendants. | Case No. 1:17-CV-00525-BLW<br><br>**MEMORANDUM IN SUPPORT OF CORIZON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

　　　　COME NOW Defendants Corizon, LLC, Christian Gelok, Michael Grace, Ryan Valley and Aaron Hofer (hereinafter, the "Corizon Defendants"), by and through their counsel of record, Parsons Behle & Latimer, pursuant to Federal Rule of Civil Procedure 56, and hereby respectfully

MEMORANDUM IN SUPPORT OF CORIZON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 1
4822-4675-4969v2

move this Honorable Court for entry of summary judgment against Plaintiff Andy Gallegos ("Plaintiff" or "Gallegos").

## I. INTRODUCTION

The Court should grant summary judgment in favor of Defendants Grace and Gelok. There is no evidence Plaintiff received inadequate medical treatment for his diabetic foot ulcer, let alone that his treatment constituted cruel and unusual punishment. Rather, Plaintiff received thorough wound care whenever he presented for treatment. Plaintiff did not seek treatment at the wound care clinic as often as he was instructed. When Plaintiff's wound appeared to be getting worse, Defendant Grace consulted two medical providers, including Defendant Gelok. Both providers instructed Defendant Grace to schedule Plaintiff for an appointment the next day, which Defendant Grace did. Thus, the treatment provided by Defendants Grace and Gelok was appropriate and did not constitute cruel and unusual punishment.

The Court should also grant summary judgment in favor of Corizon. Contrary to Plaintiff's allegations, wound care was offered during the January 2016 lockdown at ISCI. And Corizon certainly does not have a policy or custom of not providing wound care during secure lockdown events. Thus, the Court should grant summary judgment in favor of the Corizon Defendants.

## II. BACKGROUND AND PROCEDURAL HISTORY

Plaintiff is an inmate at the Idaho State Correctional Institution ("ISCI"). (Statement of Undisputed Facts ("SUF") ¶ 1). Plaintiff is diabetic and has a history of non-compliance with treatment. (*Id.* ¶ 2). He regularly fails to take the insulin prescribed to him and refuses treatment. (*Id.*). Plaintiff's uncontrolled diabetes makes him particularly prone to diabetic foot ulcers. (*Id.*). As described below, Plaintiff was diagnosed with a diabetic foot ulcer on one of his toes in December 2015. Corizon and its medical staff provided consistent and appropriate treatment to Plaintiff for more than two months, but his wound did not heal. (*Id.* ¶ 12). Eventually, medical

providers determined that Plaintiff's toe should be amputated to prevent the infection from spreading.

Plaintiff received medically appropriate treatment for his diabetic foot ulcer in December 2015 and January 2016. (*Id.* ¶ 12). Even with appropriate treatment, diabetic ulcers may never heal. (*Id.*). This is particularly true when the patient has uncontrolled or under-controlled diabetes, such as Plaintiff. (*Id.*). Thus, the fact that Plaintiff's wound had not healed over the course of several weeks of treatment was not abnormal and does not indicate that his treatment was sub-par. (*Id.*).

On December 15, 2015, Plaintiff submitted a Health Service Request ("HSR") form, asking to have his prescriptions for Cabapentin and Tylenol 4 renewed. (*Id.* ¶ 3). Plaintiff was seen by nurse practitioner ("NP") Christian Gelok the next day. (*Id.*). At that visit, NP Gelok asked Plaintiff why he was not taking his insulin. (*Id.*). Plaintiff became upset at NP Gelok's questioning, yelled at NP Gelok, and left the room. (*Id.*). Plaintiff eventually returned and asked NP Gelok to address some other issues that were unrelated to his medication refill. (*Id.*). NP Gelok renewed Plaintiff's prescriptions and told Plaintiff that he should submit an HSR form regarding his other health concerns. (*Id.*). If Plaintiff had brought an urgent medical issue to NP Gelok's attention, NP Gelok would have addressed the issue at that time. (*Id.*).

Five days later, on December 21, 2015, Plaintiff submitted an HSR, complaining that he had "a big hole on the top of [his] middle toe of [his] left foot." (*Id.* ¶ 4). Plaintiff was seen that same day by Registered Nurse ("RN") Michael Grace. (*Id.*). RN Grace has extensive experience working in the ISCI wound care clinic, including recognizing the differences between a healing wound and an infected wound. (*Id.*). After examining the wound, RN Grace referred Plaintiff to physician assistant ("PA") Daniel Dellwo for diagnosis and treatment. (*Id.*). PA Dellwo diagnosed

MEMORANDUM IN SUPPORT OF CORIZON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 3
4822-4675-4969v2

the wound as a Wagner II diabetic foot ulcer and prescribed an antibiotic. (*Id.*). PA Dellwo also provided orders that the wound should be dressed, and the dressing should be changed every two days. (*Id.*).

It is Corizon's policy to provide daily access to wound care to the inmates at ISCI. (*Id.* ¶ 5). As a result, Corizon operates a wound care clinic that is available seven days a week. (*Id.*). An inmate is not required to make an appointment. (*Id.*). Instead, an inmate will receive wound care as long as he arrives during the clinic's normal hours. (*Id.*). Thus, it is the inmate's responsibility to make sure he seeks treatment. (*Id.*). Plaintiff did not follow PA Dellwo's instruction to visit the wound care clinic every two days. (*Id.*).

While Plaintiff did not follow PA Dellwo's instruction, he did receive wound care on 10 occasions from December 23, 2015 through January 15, 2016. (*Id.* ¶ 6). On January 5, 2016, Plaintiff was scheduled to be seen by NP Gelok for a wound check. (*Id.*). However, Plaintiff refused to be seen by NP Gelok because Plaintiff said he did not get along with him. (*Id.*). On January 8, 2016, RN Grace noted that the wound was slightly smaller and there were no signs or symptoms of infection. (*Id.*). On January 15, 2016, RN Grace noted there was very little drainage and the wound appeared to be healing. (*Id.*). On January 17, 2016, Plaintiff did not seek treatment at the wound care clinic as instructed. (*Id.*).

On January 18, 2016, ISCI went into a secure lockdown. (*Id.* ¶ 7). It is Corizon's policy to provide wound care to inmates during secure lockdown events unless the IDOC instructs Corizon otherwise because of security concerns. (*Id.*). However, for security reasons, IDOC would not allow inmates to leave their units on January 18th. (*Id.*). As a result, Plaintiff did not arrive at the wound care clinic for treatment on that date. (*Id.*).

MEMORANDUM IN SUPPORT OF CORIZON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 4
4822-4675-4969v2

On January 19, 2016, ISCI was still in a secure lockdown. (*Id.* ¶ 8). Plaintiff was escorted by IDOC security personnel to medical and received wound care treatment. (*Id.*). Plaintiff reported that he had increased pain, and RN Grace noted an increase in redness and serous drainage. (*Id.*). These symptoms alone did not suggest that Plaintiff's wound was infected, but RN Grace advised Plaintiff to return for treatment the next day. (*Id.*).

The secure lockdown at ISCI continued through January 20, 2016. (*Id.* ¶ 9). Rather than having patients escorted to the wound care clinic, RN Grace and licensed practical nurse ("LPN") Julie Savell took wound care supplies and travelled from unit to unit, providing wound care. (*Id.*). While RN Grace was providing wound care to another inmate in Plaintiff's unit, Plaintiff gave an HSR form to LPN Savell, requesting wound care. (*Id.*). After submitting the HSR to LPN Savell, Plaintiff left the dayroom where RN Grace was performing wound care. (*Id.*). Plaintiff later shouted at RN Grace from across the dayroom that he still needed wound care. (*Id.*). RN Grace told Plaintiff to line up if he wanted wound care, but Plaintiff did not. (*Id.*). Instead, Plaintiff continued to sit at a table in the dayroom and visit with other inmates. (*Id.*). At no time did Plaintiff line up for wound care as instructed. (*Id.*). As RN Grace was leaving the unit, he told Plaintiff to make sure he came to receive wound care the next day. (*Id.*).

On January 21, 2016, the lockdown had lifted. (*Id.* ¶ 10). Plaintiff sought treatment at the wound care clinic on that day and reported decreased pain. (*Id.*). However, RN Grace noted increased swelling and that the wound appeared slightly larger. (*Id.*). In addition, for the first time, RN Grace noted exudate or "puss" coming from the wound. (*Id.*). As a result, RN Grace consulted with NP Gelok and NP William Poulson. (*Id.*). NP Gelok has a large volume of experience working with diabetic ulcerations, amputations, and the comorbid complications associated with diabetic ulcerations. (*Id.*). Plaintiff's symptoms did not indicate there was an emergent medical issue that

MEMORANDUM IN SUPPORT OF CORIZON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 5
4822-4675-4969v2

required immediate attention. (*Id.*). Consequently, both providers instructed RN Grace to schedule Plaintiff for an evaluation at the out-patient clinic the next day. (*Id.*).

Plaintiff was seen by NP Poulson the next morning. (*Id.* ¶ 11). Upon examination of the wound, NP Poulson admitted Plaintiff to the infirmary. (*Id.*). Plaintiff's wound did not improve after several weeks of treatment in the infirmary, including intravenous antibiotics. (*Id.*). Because Plaintiff's wound failed to improve, he was sent for an offsite surgical consultation with Dr. Travis Kemp. (*Id.*). Dr. Kemp recommended amputation of Plaintiff's toe to prevent the infection from spreading. (*Id.*). Dr. Kemp amputated Plaintiff's toe on February 22, 2016. (*Id.*).

Plaintiff asserts various claims under 42 U.S.C. § 1983 for alleged violations of his constitutional rights. (Amended Complaint, ECF No. 12-2 ¶¶ 147-86). In its Successive Review Order, the Court dismissed all of Plaintiff's claims except three. (Successive Review Order, ECF No. 11 at 7). The Court held that Plaintiff could proceed on his claim that Corizon had an unconstitutional policy of closing the wound care clinic during secure lockdown events.[1] (*Id.* at 8-9). In addition, the Court held that Plaintiff could proceed on his claims that the medical care provided by RN Grace and NP Gelok constituted cruel and unusual punishment under the Eighth Amendment. (*Id.* at 11).

## III.   ARGUMENT

### A.   Summary Judgment Standard

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment rule "is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett,*

---

[1] Defendants Hofer and Valley were not dismissed by the Court because they were allegedly the Corizon employees responsible for canceling the wound care clinic during the lockdown. (ECF No. 11 at 11).

477 U.S. 317, 323–24 (1986). "The moving party is entitled to summary judgment if that party shows that each material fact cannot be disputed. To show that the material facts are not in dispute, a party may cite to particular parts of materials in the record, or show that the adverse party is unable to produce admissible evidence to support the fact." *Caplinger v. CCA*, 999 F. Supp. 2d 1203, 1212 (D. Idaho 2014).

      **B.**    **Eighth Amendment Standard**

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against prisoners. *Estelle v. Gamble*, 429 U.S. 97, 101 (1976). To state a claim under the Eighth Amendment, a prisoner must show that he has been deprived of "the minimal civilized measure of life's necessities" as a result of defendants' actions. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks omitted). An Eighth Amendment claim requires a prisoner plaintiff to satisfy "both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012).

Under the Eighth Amendment, prisoners are entitled to a minimal level of medical care. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Regarding the objective standard for prisoners' medical care claims, the Supreme Court has explained that "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). As to the subjective standard, a prison medical provider acts with "deliberate indifference ... only if the [provider] knows of and disregards an excessive risk to inmate health and safety." *Gibson v. Cty. of Washoe, Nev.*, 290 F.3d 1175, 1187 (9th Cir. 2002), overruled on other grounds by *Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (citation and internal quotation marks omitted). Mere indifference, medical malpractice, or

negligence will not support a cause of action under the Eighth Amendment. *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (per curiam).

        **C.**      **NP Gelok's Treatment of Plaintiff's Diabetic Ulcer Did Not Violate the Eighth Amendment.**

NP Gelok was involved in treating Plaintiff's diabetic foot ulcer at most on two occasions. Plaintiff's medical records demonstrate that NP Gelok's conduct was medically appropriate and certainly did not constitute cruel and unusual punishment. Thus, the Court should grant summary judgment to NP Gelok.

On December 16, 2015, NP Gelok saw Plaintiff regarding Plaintiff's request to have his prescriptions for Cabapentin and Tylenol 4 renewed. (SUF ¶ 3). During this visit, NP Gelok asked Plaintiff why he was not taking his insulin. (*Id.*). Plaintiff became upset at NP Gelok's questioning, yelled at NP Gelok, and left the room. (*Id.*). Plaintiff eventually returned and asked NP Gelok to address some other issues that were unrelated to his medication refill. (*Id.*). It is unclear from the medical records what those issue were. However, NP Gelok renewed Plaintiff's prescriptions and told Plaintiff that he should submit an HSR form regarding his other health concerns. (*Id.*).

Even assuming Plaintiff asked NP Gelok to examine his foot on December 16th, Plaintiff waited five days to file an HSR regarding the wound on his foot. (*Id.* ¶ 4). Plaintiff was then seen that same day regarding his new complaint. (*Id.*). Thus, any delay in receiving treatment is Plaintiff's own fault. If he had followed NP Gelok's direction to file a separate HSR form, he would likely have been seen that same day.

Moreover, NP Gelok's instruction to file a new HSR form was appropriate. Inmates are typically required to submit an HSR form for new medical issues because it allows providers and nurses to evaluate and prioritize each request for treatment. (*Id.* ¶ 14). It also allows the providers and nurses to schedule enough time to evaluate and assess the medical conditions at issue. (*Id.*).

Thus, NP Gelok was correct to advise Plaintiff to submit a new HSR form for any new medical issues for which he needed treatment.

NP Gelok's only other involvement with the treatment of Plaintiff's wound came on January 21, 2016. On that date, Plaintiff sought and received treatment at the wound care clinic. (*Id.* ¶ 10). Plaintiff reported decreased pain, but RN Grace noted increased swelling and that the wound appeared slightly larger. (*Id.*). In addition, for the first time, RN Grace noted exudate or "puss" coming from the wound. (*Id.*). As a result, RN Grace consulted with NP Gelok and NP Poulson. (*Id.*). Both providers instructed RN Grace to schedule Plaintiff for an evaluation at the out-patient clinic the next day. (*Id.*). The next morning, NP Poulson examined the wound and admitted Plaintiff to the infirmary, where Plaintiff's wound was treated for the next month. (*Id.* ¶ 11).

Nothing in this interaction suggests that NP Gelok was deliberately indifferent to Plaintiff's medical needs. Plaintiff's symptoms did not indicate there was an emergent medical issue that required immediate attention. (*Id.* ¶ 10). Indeed, Plaintiff continued to receive conservative wound care treatment for another month before his toe was eventually amputated. Thus, the Court should grant summary judgment in favor of NP Gelok.

> **D.     RN Grace's Treatment of Plaintiff's Diabetic Ulcer Did Not Violate the Eighth Amendment.**

Plaintiff's medical records demonstrate that RN Grace provided appropriate medical care. (SUF ¶ 12). RN Grace treated Plaintiff's wound whenever Plaintiff sought treatment from RN Grace. Despite RN Grace's instructions, Plaintiff failed to line up for treatment on January 20, 2016. (*Id.* ¶ 9). As a result, RN Grace did not treat Plaintiff's wound on that day. (*Id.*). However, as RN Grace was leaving Plaintiff's unit, he told Plaintiff to make sure he came to receive wound care the next day. (*Id.*). In addition, when Plaintiff's wound displayed signs of infection, RN Grace

consulted with two medical providers, NP Gelok and NP Poulson. (*Id.* ¶ 13). These providers instructed RN Grace to schedule Plaintiff to be seen by a provider the next day, which RN Grace did. (*Id.* ¶ 10). Thus, RN Grace was not deliberately indifferent to Plaintiff's medical needs, and the Court should grant summary judgment in favor of RN Grace.

Moreover, the Court should grant summary judgment because he has failed to support his claim with expert testimony that his care was medically unacceptable. "A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." *Franklin v. State of Or., State Welfare Div.*, 662 F.2d 1337, 1344 (9th Cir. 1981). While expert testimony is not always required to support a claim for deliberate indifference based on medical care, "in cases involving complex medical issues where plaintiff contests the type of treatment he received, expert opinion will almost always be necessary to establish the necessary level of deliberate indifference." *Shields v. Cannon*, No. 2:11-CV-3185 JAM AC, 2015 WL 1258536, at *15 (E.D. Cal. Mar. 18, 2015). Here, Plaintiff's difference of opinion regarding when his diabetic ulcer displayed sufficient signs of infection to require more aggressive treatment is insufficient to state a claim of deliberate indifference. Thus, the Court should grant summary judgment.

    **E.**    **Corizon did Not Violate the Eighth Amendment**

There is no vicarious liability in § 1983 actions. *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138-39 (9th Cir. 2012). Consequently, "[a] private entity is not liable simply because it employed individuals who allegedly violated a plaintiff's constitutional rights." *Larsgard v. Corizon Health, Inc.*, No. CV 13-01747-PHX-SPL, 2014 WL 5340581, at *6 (D. Ariz. Oct. 21, 2014). Instead, the plaintiff must prove that (1) the plaintiff was deprived of a constitutional right; (2) the municipality or entity had a policy or custom; (3) the policy or custom amounted to deliberate indifference to the plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the

MEMORANDUM IN SUPPORT OF CORIZON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 10

constitutional violation. *Tsao*, 698 F.3d at 1138-39; *Mabe v. San Bernardino Cnty.*, 237 F.3d 1101, 1110–11 (9th Cir. 2001).

To create liability, an unwritten policy or custom must be so "persistent and widespread" that it constitutes a "permanent and well settled" practice. *Monell v. Department of Social Services,* 436 U.S. 658, 691 (1978) (quoting *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 167–68 (1970)). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates,* 99 F.3d 911, 918 (9th Cir. 1996). One or two incidents are insufficient. *Id.*

Corizon does not have a policy or custom of not providing wound care during secure lockdown events at ISCI. First, contrary to Plaintiff's allegations, wound care was available during the January 2016 lockdown. (SUF ¶¶ 8-9). Second, Corizon's official policy is to provide wound care and other medical care during secure lockdown events, provided such care does not conflict with IDOC security concerns. (*Id.* ¶ 7). Third, even if Corizon had not provided wound care on one day, January 18, 2016, it would not establish an unwritten policy or custom of failing to provide wound care. Rather, it would amount to merely a single "isolated or sporadic incident[]." *Trevino,* 99 F.3d at 918. Consequently, the Court should grant summary judgment to Corizon.

Similarly, the Court should grant summary judgment to Aaron Hofer and Ryan Valley. Valley and Hofer are named as defendants in this case only because they were supposedly the Corizon employees responsible for closing the wound care clinic. (ECF No. 11 at 11). Thus, if the Court grants summary judgment to Corizon, the Court should also grant summary judgment to Hofer and Valley.

IV.     CONCLUSION

The Court should grant summary judgment in favor of the Corizon Defendants. NP Gelok and RN Grace provided adequate medical care to Plaintiff whenever he presented for treatment of his diabetic foot ulcer. In addition, Corizon does not have a policy of not providing wound care during secure lockdown events at ISCI. For each of the foregoing reasons, the Corizon Defendants' Motion for Summary Judgment against Plaintiff Andy Gallegos should be granted.

DATED this 30th day of August, 2019.

                                  PARSONS BEHLE & LATIMER

                                  By: */s/ Dylan A. Eaton*
                                      Dylan A. Eaton
                                      Bryce Jensen
                                      Counsel for Defendants Corizon, LLC, Christian Gelok, Michael Grace, Ryan Valley and Aaron Hofer

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 30th day of August, 2019, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

N/A

AND I FURTHER CERTIFY that on such date I served the foregoing on the following Non-CM/ECF Registered Participants in the manner indicated:

| | |
|---|---|
| Andy Gallegos (#26591)<br>ISCI – Medical Annex<br>P.O. Box 14<br>Boise, ID 83707<br>*(Pro Se)* | ☒ U.S. Mail, Postage Prepaid<br>☐ Hand Delivered<br>☐ Overnight Mail<br>☐ Telecopy<br>☐ Email |

By: */s/ Dylan A. Eaton*
      Dylan A. Eaton
      Bryce Jensen