UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ANDY GALLEGOS,<br><br>Plaintiff,<br><br>v.<br><br>CORIZON LLC, DANIEL DELLWO, CHRISTIAN GELOK, JAN DRAKE, MICHAEL GRACE, RYAN VALLEY, AARON HOFER, ALYSSA TURPIN, KELLY LARSON, WILLIAM POULSON, MURRAY YOUNG, DAVID AGLER, and RONA SIEGERT, in their individual and official capacities,<br><br>Defendants. | CASE NO. 1:17-cv-00525-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court are: 1) Defendants' Motion for Summary Judgment (Dkt. 21), 2) Plaintiff's Motion to Stay Summary Judgment (Dkt. 24), and 3) Plaintiff's Motions to Compel Discovery (Dkts. 25, 26, 27, 28, 29). For the reasons that follow the Court will deny Plaintiff's motions and grant Defendants' motion for summary judgment.

## BACKGROUND

Plaintiff, Andy Gallegos, is an inmate at the Idaho State Correction Institution (ISCI). *Amd. Compl.* ¶ 5, Dkt. 5. Gallegos is a diabetic. *Id.* In December 2015 he developed a diabetic ulcer on his toe. *Id.* ¶ 38. His toe was amputated in February 2016 to prevent further spread of infection from the ulcer. *See Def.'s Ex. A*, Dkt. 21-6 at 53, 57.

Following dismissal of his initial complaint, Gallegos filed an amended complaint against Corizon and some of its medical staff. He alleges that the care he received in relation to his diabetic ulcer and toe amputation was deficient and amounted to deliberate indifference in violation of the Eighth Amendment. *Amd. Compl.* ¶¶ 147-86, Dkt. 12-2. More detailed facts related to Gallegos' treatment are discussed below in relation to the specific claims.

The Court entered a successive review order allowing Gallegos to proceed on a limited subset of his claims. *Review Order* at 18-19, Dkt. 11. The review order allowed Gallegos to proceed on his claim that Corizon had a policy of "not providing Wound Care Clinics during facility Lockdown or Secure Status Events." *Id.* at 8. The review order allowed Plaintiff to proceed against Defendants Hofer and Valley because they were identified by Gallegos as the employees responsible for cancelling the wound care clinic in accordance with Corizon policy. *Id.* at 11. The review order also allowed Gallegos to proceed against Defendants Gelok and

Grace with respect to their treatment of his ulcer prior to the amputation. *Id.* All other claims and defendants were dismissed.

On February 5, 2019 the Court entered a scheduling order setting the discovery cutoff as August 5, 2019 and the dispositive motion deadline as September 2, 2019. Dkt. 20. Gallegos sent a letter, dated August 23, 2019, to Defendants complaining that they had failed to fully answer his discovery requests (Dkt. 23), this letter was received by Corizon on August 30. *Def.'s Resp.* at 3, Dkt. 31. On August 30, 2019, Defendants filed their motion for summary judgment. Dkt. 21. On September 26, 2019, Gallegos filed his motions to compel, and his motion to stay Defendants' motion for summary judgment. *Pl.'s Mot.*, Dkt. 24; *Mot.'s Compel*, Dkts. 25-29. Gallegos alleges that Defendants did not serve their discovery responses until July 29, July 30, and August 9, 2019. *Gallegos Dec.* at 1, Dkt. 24. On November 26, 2019, Gallegos filed a Motion to Dispute Material Facts of Defendants Summary Judgment, which is essentially his statement of disputed facts. Dkt. 32.

## LEGAL STANDARD

### A. *Pro Se* Litigants

*Pro se* litigants are held to a lesser pleading standard than are parties represented by counsel. *See Federal Exp. Corp. v. Holowecki*, 552 U.S. 389, 402

(2008) (*pro se* pleadings are to be "liberally construed"). However, *pro se* litigants are still required to comply with both the Local Rules of this District and the Federal Rules of Civil Procedure, including pleading requirements and filing deadlines. *See* D. Idaho Local Rule Civil 83.7.

**B.    Motion to Compel**

Federal Rule of Civil Procedure 26(b) provides that:

> "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."

Fed. R. Civ. P. 26(b)(1).

Pursuant to Rule 37, a party seeking discovery may move for an order compelling production by a party who has failed to answer an interrogatory or produce requested documents. Fed. R. Civ. P. 37(a)(3). While the moving party must make a threshold showing of relevance, *see, e.g., Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 (1978), the party resisting discovery carries the "heavy burden" of showing specifically why the discovery request is irrelevant, unduly burdensome, disproportional to the needs of the case, or otherwise improper. *See Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).

"A motion to compel may be filed after the close of discovery." *Gault v. Nabisco Biscuit Co.*, 184 F.R.D. 620, 622 (D. Nev. 1999). However, "[a]bsent unusual circumstances, it should be filed before the scheduled date for dispositive motions." *Id.*

### C. Motion to Stay Summary Judgment

Federal Rule of Civil Procedure 56(d) provides that, when facts are unavailable to the nonmoving party, he may be granted additional time to obtain the facts needed to contest the motion for summary judgment. To warrant application of this subsection, the nonmoving party must show by affidavit or declaration that, for specified reasons, he cannot present facts essential to justify his opposition. *Id.*; *Employers Teamsters Local Nos. 175 & 505 Pension Tr. Fund v. Clorox Co.*, 353 F.3d 1125, 1129 (9th Cir. 2004). The Court has the following options in ruling on the motion: "(1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d).

### D. Motion for Summary Judgment

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of

the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims ...." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). There must be a genuine dispute as to any material fact – a fact "that may affect the outcome of the case." *Id.* at 248.

The evidence must be viewed in the light most favorable to the non-moving party, and the Court must not make credibility findings. *Id.* at 255. Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The Court must be "guided by the substantive evidentiary standards that apply to the case." *Liberty Lobby*, 477 U.S. at 255. If a claim requires clear and convincing evidence, the question on summary judgment is whether a reasonable

jury could conclude that clear and convincing evidence supports the claim. *Id.*

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Deveraux*, 263 F.3d at 1076. The non-moving party must go beyond the pleadings and show "by her [ ] affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine dispute of material fact exists. *Celotex*, 477 U.S. at 324.

However, the Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (quotation omitted). Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts." *Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

    **E.**    **Eighth Amendment Deliberate Indifference**

The Eighth Amendment to the United States Constitution, applicable to the States through the Fourteenth Amendment, protects prisoners against cruel and unusual punishment. To state a claim under the Eighth Amendment, prisoners must show that they are "incarcerated under conditions posing a substantial risk of serious harm," or that they have been deprived of "the minimal civilized measure of life's necessities" as a result of the defendants' actions. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks omitted). An Eighth Amendment claim requires a plaintiff to satisfy "both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) (en banc). The Eighth Amendment includes the right to adequate medical care in prison, and prison officials or prison medical providers can be held liable if their "acts or omissions [were] sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

Regarding the objective standard for prisoners' medical care claims, the Supreme Court of the United States has explained that "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate

indifference to medical needs amounts to an Eighth Amendment violation only if

those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). The Ninth

Circuit has defined a "serious medical need" in the following ways:

> failure to treat a prisoner's condition [that] could result
> in further significant injury or the unnecessary and
> wanton infliction of pain[;] ... [t]he existence of an
> injury that a reasonable doctor or patient would find
> important and worthy of comment or treatment; the
> presence of a medical condition that significantly affects
> an individual's daily activities; or the existence of
> chronic and substantial pain ....

*McGuckin v. Smith,* 974 F.2d 1050, 1059-60 (9th Cir. 1992) (internal citations

omitted), *overruled on other grounds*, *WMX Techs., Inc. v. Miller*, 104 F.3d 1133

(9th Cir. 1997) (en banc).

As to the subjective standard, "deliberate indifference entails something

more than mere negligence, [but] is satisfied by something less than acts or

omissions for the very purpose of causing harm or with knowledge that harm will

result." *Farmer*, 511 U.S. at 835. A prison official or prison medical provider acts

with "deliberate indifference ... only if the [prison official or provider] knows of

and disregards an excessive risk to inmate health and safety." *Gibson v. Cnty. of*

*Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002) (internal quotation marks omitted),

*overruled on other grounds by Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (9th

Cir. 2016) (en banc). "Under this standard, the prison official must not only 'be

aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Farmer*, 511 U.S. at 837).

"If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk." *Gibson*, 290 F.3d at 1188. However, "[w]hether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, ... and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842; *see also Lolli v. County of Orange*, 351 F.3d 410, 421 (9th Cir. 2003) ("[D]eliberate indifference to medical needs may be shown by circumstantial evidence when the facts are sufficient to demonstrate that a defendant actually knew of a risk of harm.").

In the medical context, a conclusion that a defendant acted with deliberate indifference requires that the plaintiff show "a purposeful act or failure to respond to a prisoner's pain or possible medical need and ... harm caused by the indifference." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Deliberate indifference can be "manifested by prison doctors in their

response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104-05 (footnotes omitted).

Mere indifference, medical malpractice, or negligence will not support a cause of action under the Eighth Amendment. *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (per curiam). A delay in treatment does not violate the Eighth Amendment unless the delay causes further harm. *McGuckin*, 974 F.2d at 1060. If medical personnel have been "consistently responsive to [the inmate's] medical needs," and there has been no showing that the medical personnel had "subjective knowledge and conscious disregard of a substantial risk of serious injury," there has been no Eighth Amendment violation. *Toguchi*, 391 F.3d at 1061.

The Eighth Amendment does not provide a right to a specific treatment, *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997), and differences in judgment between an inmate and prison medical providers regarding appropriate medical diagnosis and treatment are not enough to establish a deliberate indifference claim, *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989); *see also Lamb v. Norwood*, 895 F.3d 756, 760 (10th Cir. 2018) ("[P]rison officials do not act with deliberate indifference when they provide medical treatment even if it is subpar

or different from what the inmate wants."). To state an Eighth Amendment claim "involving choices between alternative courses of treatment," the plaintiff must plausibly allege "that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk' to the prisoner's health." *Toguchi*, 391 F.3d at 1058 (alteration omitted) (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)).

Stated another way, a plaintiff must plausibly allege that medical providers chose one treatment over the plaintiff's preferred treatment "even though they knew [plaintiff's preferred treatment] to be medically necessary based on [the plaintiff's] records and prevailing medical standards." *Norsworthy v. Beard*, 87 F. Supp. 3d 1104, 1117 (N.D. Cal. 2015). A prison doctor's judgment in choosing one treatment over another—even if the chosen treatment happens to be less expensive and, therefore, more profitable to the entity providing that treatment—does not constitute deliberate indifference unless the recommendation "was so inadequate that it demonstrated an absence of professional judgment, that is, that no minimally competent professional would have so responded under those circumstances." *Collignon v. Milwaukee Cnty.*, 163 F.3d 982, 989 (7th Cir. 1998); *see also Zingg v. Thomas Groblewski &*

*Mass. P'ship for Corr. Healthcare*, 907 F.3d 630, 638 (1st Cir. Oct. 29, 2018) (holding that there is no "per se Eighth Amendment prohibition against corrections officials considering cost, even when considered only in the course of selecting treatment that is aimed at attending to an incarcerated person's serious medical needs").

### F.   *Monell* Liability

To state a claim for relief against Corizon—the private entity providing medical care to Idaho state prisoners under contract with the IDOC—Plaintiff must plausibly allege the following: (1) Plaintiff was deprived of a constitutional right; (2) Corizon had a policy or custom; (3) the policy or custom amounted to deliberate indifference to plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation. *Mabe v. San Bernardino Cnty.*, 237 F.3d 1101, 1110-11 (9th Cir. 2001); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012). An unwritten policy or custom must be so "persistent and widespread" that it constitutes a "permanent and well settled" practice. *Monell*, 436 U.S. at 691 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-168 (1970)). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918

(9th Cir. 1996).

## ANALYSIS

### A.    Motions to Compel

Gallegos filed motions to compel discovery from Defendants Corizon (Dkt. 25), Valley (Dkt. 26), Gelok (Dkt. 27), Hofer (Dkt. 28), and Grace (Dkt. 29). In his motions, Gallegos takes issue with the defendants use of boilerplate objections and argues that certain documents are in their control and should be produced. *Pl.'s Br.*, Dkt. 30. Gallegos also alleges that he had his access to the courts impeded because the ISCI Resource Center is only open two days a week and requires a paralegal to come from another unit. The Court assumes this argument is made to provide a reason why the motions to compel were filed almost two months after the close of discovery, and almost a month after the dispositive motion deadline.

Defendants argue that Gallegos has failed to specifically identify what additional discovery Defendants should provide. *Def.'s Resp.* at 4, Dkt. 31. They further argue that the motions should be denied because they were untimely, with no justification for the delay. *Id.* While Gallegos' discovery requests are clearly untimely, recognizing his *pro se* status the Court will review each motion to compel. *See* 8B Fed. Prac. & Proc. Civ. § 2285 (3d ed.).

### 1.  Corizon

Gallegos argues that Corizon should be compelled to provide responses to

Interrogatory No. 2, and Requests for Production Nos. 1 and 2. *Gallegos Dec.*, Dkt. 25 at 3-4. Interrogatory No. 2 asked Corizon to "[e]xplain in concise detail, Corizon's policy or customs of having to go through so many different forms over and over to see a specialist." *Corizon Resp.* at 2, Dkt. 25-1. Corizon objected to the interrogatory, and answered that an inmate "will be sent to a specialist if medically indicated based on the provider's medical judgment." Requests for Production Nos. 1 and 2 were for the medical check-in log and medical callout log for December 1, 2015 through February 1, 2016. Corizon stated that it was not in possession, custody, or control of any responsive documents, and instead these documents were in the possession of IDOC.

The interrogatory doesn't relate to any claims left remaining after the review order; further, Corizon sufficiently responded. Regarding the requests for production, Corizon stated that it was not in possession or control of any responsive document. Gallegos suggests that Corizon and IDOC are in a symbiotic relationship so Corizon should be able to produce the documents.[1] Corizon is the medical provider for IDOC. Gallegos should have requested the documents from

---

[1] Corizon supplemented its discovery to Gallegos on September 20, 2019. In that supplement Corizon provided documents it was able to obtain from IDOC that Gallegos had requested. *Jensen Dec.* at 2, Dkt. 31-1.

IDOC. *Caffrey v. Espino*, 112 F.3d 515 n.2 (9th Cir. 1997) (motion to compel was properly denied when defendants stated they were not in possession or control of requested documents). Accordingly, this motion to compel will be denied.

### 2. Valley

Gallegos seeks to compel responses to Interrogatory No. 2 and Requests for Production Nos. 2-6. *Gallegos Dec.*, Dkt. 26 at 2-3. Interrogatory No. 2 asks Valley to explain why there was no wound care on January 18 and 20 during the lockdown. *See Valley Resp.* at 2, Dkt. 26-1. Valley responded that wound care was available to inmates, subject to any prison security restrictions or limitations. This is a sufficient response.

Request for Production Nos. 2 and 3 seek information on Corizon staff responsible for scheduling prisoner medical appointments and ensuring that inmates' requests are responded to. Request for Production No. 4 seeks information regarding the procedures in effect during the January 2016 lockdown for conducting sick call. Request for Production No. 5 seeks information regarding Corizon staff who are responsible for investigating and deciding inmate grievances. Request for Production No. 6 seeks information on the procedure in effect from January to July 2016 for investigating and deciding inmate grievances. Valley replied to all of the above requests for production by stating that he was not

in possession of responsive documents, and that they were actually interrogatories. Valley then proceeded to provide answers to each to the extent of his knowledge.

Only Interrogatory No. 2 and Request for Production No. 4 are relevant to Gallegos' remaining claims, and they were both sufficiently responded to. Accordingly, this motion to compel will be denied.

### 3. Gelok

Gallegos appears to seek to compel responses to Interrogatory Nos. 4-6. *Gallegos Dec.*, Dkt. 27 at 2. Each of the interrogatories relate to Gelok's involvement in Gallegos' medical care and the documentation thereof. *See Gelok Resp.* at 3-5, Dkt. 27-1. Gelok responded to each interrogatory specifically and fully. Accordingly, this motion to compel will be denied.

### 4. Hofer

Gallegos seeks responses to Interrogatory Nos. 2 and 3, and Request for Production No. 3. *Gallegos Dec.*, Dkt. 28 at 2-3. Interrogatory Nos. 2 and 3 ask about wound care during the lockdown on January 18 and 20, 2016. *Hofer Resp.* at 2, Dkt. 28-1. Hofer responded to each and indicated that wound care was available, subject to security restrictions. *Id.* This response is sufficient.

Request for Production No. 3 asked Hofer to produce the "Unit 14 Log" for the days of January 15-23, 2016. Hoffer stated that the log was not in his

possession or control, because it was a record of IDOC. As discussed above, a party is not required to produce something not in their possession. Accordingly, this motion to compel will be denied.

### 5. Grace

Gallegos seeks responses to Interrogatory Nos. 1-4. *Gallegos Dec.*, Dkt. 29 at 2. Each interrogatory seeks information about Gallegos' perceived failure of Grace to provide medical care or have him seen by another provider. *See Grace Resp.* at 2-3, Dkt. 29-1. Grace responded to each interrogatory sufficiently. Accordingly, this motion to compel will be denied.

### B. Motion to Stay Motion for Summary Judgment

In his motion to stay summary judgment, Gallegos did not present any reason that he did not have specific facts with which to respond to Defendants' motion for summary judgment. *Pl.'s Mot.*, Dkt. 24. Instead he asked to stay summary judgment until the Court ruled on his motions to compel. In his motions to compel Gallegos did not identify any specific deficiencies in Defendants' responses which would have allowed him to better respond to Defendants' motion. Instead he took issue with Defendants use of boilerplate objections and argued that certain documents are in their control and should be produced.

The Court has reviewed the information sought in Gallegos' motions to

compel. Defendants' responses to the interrogatories were sufficient. Further, the information Gallegos sought in his requests for production would not have been relevant to the issues addressed in Defendants' motion for summary judgment. Simply put, the Court can identify no facts in Gallegos' motions to compel that would have allowed him to better respond to Defendants' motion for summary judgment. The Court also notes that on November 26, 2019, Gallegos filed a motion to dispute material facts, which is essentially his statement of disputed facts. Dkt. 32. This is further evidence that Gallegos had the facts necessary to respond to Defendants' motion. Accordingly, the Court will deny his motion.

### C. Motion for Summary Judgment

#### 1. Corizon's Policy of Providing Wound Care During Lockdown or Secure Status Events

Gallegos alleges that Corizon had a policy of "not providing Wound Care Clinics during facility Lockdown or Secure Status Events." *Amd. Compl.* ¶ 22, Dkt. 12. Corizon responds that it does not have a policy or custom of not providing wound care during secure lockdown events. *Def.'s Mem.* at 11, Dkt. 21-1. Instead Defendants' argue that they provide wound care during secure lockdown events subject to IDOC security restrictions. *Id.*

ISCI went into secure lockdown on January 18, 2016 and remained in lockdown until January 21, 2016. *See Amd. Compl.* at 18-24, Dkt 12; *Grace Dec.*

at 3-4, Dkt. 21-4. Due to the lockdown IDOC security staff would not allow inmates to leave their units on January 18. *Grace Dec.* at 3, Dkt. 21-4. On January 19, Gallegos was escorted from his unit to medical to receive wound care. *Id*; *Def. Ex. A*, Dkt. 21-6 at 51. Gallegos disputes whether Grace or another provider saw him on January 19, however he does not dispute that he received wound care on January 19. *Pl.'s Mot.* at 4-5, Dkt. 32. On January 20, due to the lockdown, defendant Grace and at least one other provider took medical supplies and provided wound care in each unit. *Grace Dec.* at 3-4, Dkt. 21-4. Gallegos provided an HSR requesting wound care while Grace was in Gallegos' unit, however Gallegos did not actually receive wound care. *Id.*; *Pl.'s Mot.* at 5-6, Dkt. 32. The parties disagree whether Gallegos left the day room, or whether Grace didn't have the medical supplies. *See Grace Dec.* at 3-4, Dkt. 21-4; *Pl.'s Mot.* at 5-6, Dkt. 32. However, Gallegos does not dispute that Corizon staff came to his unit and provided wound care on January 20. *Pl.'s Mot.* at 5-6, Dkt. 32.

There is no evidence in the record that Corizon had a policy or custom of not providing wound care during secure lockdown events. Instead the record demonstrates that Corizon staff did provide wound care during the secure lockdown from January 18 to January 21. Indeed, Gallegos admits that he received wound care on January 19 during the lockdown. Even if he didn't receive wound

care on January 20, this does not rise to the level of an Eighth Amendment violation. *Mabe v. San Bernardino Cnty.*, 237 F.3d 1101, 1110-11 (9th Cir. 2001). Accordingly, Defendants motion for summary judgment on this claim as to Defendants Corizon, Valley, and Hofer will be granted.

## 2. Medical Care of Gallegos' Foot Ulcer

The successive review order allowed Gallegos to proceed with his Eighth Amendment medical treatment claims against Defendants Gelok and Grace, with respect to their treatment of his foot ulcer prior to amputation. *Review Order* at 11, Dkt. 11.

### a. Defendant Gelok

The Court has carefully reviewed the record and can only find two interactions between Gelok and Gallegos. Gallegos had an appointment with Gelok on December 16, 2015 to refill his prescriptions. On January 21 Gelok was consulted by Grace about Gallegos' ulcer.

Gallegos had put in a health service request (HSR) form on December 15, 2016 to renew prescriptions for Cabapentin and Tylenol 4. *Gelok Dec.* at 3, Dkt. 21-3; *Pl.'s Mot.* at 2-3, Dkt. 32. At the December 16 appointment, Gelok asked Gallegos why he had not been taking his insulin, which led to Gallegos getting frustrated and leaving the room. *See Gelok Dec.* at 3. Gallegos eventually returned

and Gelok renewed his prescriptions. *Id.* Gallegos alleges that he told Gelok about the ulcer on his toe at this appointment. *Pl.'s Mot.* at 2-3, Dkt. 32. Gelok told Gallegos to submit an HSR for any new medical problems. *Id.*

Gallegos did not submit an HSR for the ulcer until December 21. When he submitted the HSR he was seen by Grace the same day, and had a follow-up appointment with Defendant Dellwo the next day. *See Def.'s Ex. A.*, Dkt. 21-6 at 3, 7-8. Dellwo diagnosed Gallegos with a diabetic foot ulcer and ordered that Gallegos come to the Wound Care Clinic every other day to have his dressings changed. *Grace Dec.* at 3, Dkt. 21-4.

Gallegos was scheduled to see Gelok on January 5, 2016, but Gallegos refused to be seen because he didn't get along with Gelok. *Def.'s Ex. A*, Dkt. 21-6 at 52; *Pl.'s Mot.* at 6-7, Dkt. 32. Gelok was also consulted about Gallegos' ulcer by Grace on January 21, 2016. *Gelok Dec.* at 3-4, Dkt. 21-3; *Pl.'s Mot.* at 6-7, Dkt. 32. The medical records show that on January 21, Grace observed that the wound site looked slightly larger with increased swelling and puss. *Def.'s Ex. A*, Dkt. 21-6 at 51; *Grace Dec.* at 4, Dkt. 21-4. Grace consulted with Defendant Poulson and Gelok who instructed him to schedule Gallegos for an evaluation. *Id.* Gallegos was seen the next day by Poulson and admitted to the infirmary. *Def.'s Ex. A*, Dkt. 21-6 at 8-9. Gallegos received treatment for several weeks in the infirmary, which

included intravenous antibiotics. *See id.* at 9. Gelok was not involved in Gallegos'

treatment while he was in the infirmary. *Id.* When the ulcer failed to heal Gallegos

was sent to an off-site consultation with Dr. Travis Kent who recommended that

Gallegos toe be removed to prevent spread of the infection. *Id.* at 54.

Gallegos states that he should have been seen by either Gelok or Poulson as

soon as Grace told them about the worsening of Gallegos' ulcer. *Pl.s' Mot.* at 7,

Dkt. 32. Gallegos' argues that this failure shows Gelok and Poulson didn't care

about doing their jobs and that this was deliberately indifferent. *Id.*

Gelok's conduct does not rise to the level of a constitutional violation. In

both interactions with Gelok, Gallegos believes he should have had his ulcer

examined immediately. However, none of Gelok's actions, which may have

slightly delayed treatment for Gallegos' ulcer, caused further harm. *McGuckin*,

974 F.2d at 1060. Gallegos has offered no evidence that Gelok consciously

disregarded a substantial risk of serous injury to Gallegos. *Toguchi*, 391 F.3d at

1061. Accordingly, Defendants' motion will be granted as to Gelok.

### b. Defendant Grace

Gallegos argues that Grace's failure to identify the infection on January 15

and then subsequent failure to treat him on January 19 and 20 led to his toe being

amputated and amount to deliberate indifference. *See Pl.'s Mot.* at 7, Dkt. 32.

Grace is a Registered Nurse who worked in the ISCI Wound Care Clinic from 2014 to 2016. *Grace Dec.* at 2, Dkt. 21-4. As part of his duties Grace worked with wounds of all kinds and was trained to recognize the signs and symptoms of infection. *Id.*

The medical records show that Grace treated Gallegos from December 23, 2015 to January 22, 2016. *Def.'s Ex. A*, Dkt. 21-6 at 50-51. On January 15 the medical records show that Grace noted Gallegos' ulcer was approximately 1 centimeter in diameter and 2-3 millimeters deep and it appeared to be healing. *Id.* at 51. Gallegos missed wound care on January 17. *See Grace Dec.* at 3. It is the inmate's responsibility to seek treatment at the Wound Care clinic. *Id.* at 2. On January 19 the medical records show that Gallegos reported increased pain and that there was increased redness and swelling around the ulcer. *Def.'s Ex. A*, Dkt. 21-6 at 51. Grace cleaned the wound and told Gallegos to return to the clinic the next day, but there was no indication of infection. *Id.*; *Grace Dec.* at 3. The parties dispute whether Grace forgot supplies necessary to treat Gallegos' ulcer on January 20 or if Gallegos didn't line up for wound care as requested by Corizon staff. *See Grace Dec.* at 4; *Pl.'s Mot.* at 6, Dkt. 32. Either way Gallegos did not receive treatment on January 20. Gallegos did receive treatment on January 21. *Pl.'s Mot.* at 6, Dkt. 32; *Def.'s Ex. A*, Dkt. 21-6 at 51. At that visit Grace noted puss coming

from the ulcer and an increase in both swelling and the size of the ulcer. *Def.'s Ex. A*, Dkt. 21-6 at 51. Grace consulted with Poulson and Gelok who told Grace to schedule Gallegos for an evaluation, which was conducted the next day. *Id.* At that evaluation Gallegos was admitted to the infirmary and treated for several weeks. *See id.* at 9.

At the first sign of infection Grace consulted with Poulson and Gelok and Gallegos was placed in the infirmary for three weeks. Despite the three weeks of treatment in the infirmary, and intravenous antibiotics, Gallegos still had to have his toe amputated. Even with appropriate treatment diabetic ulcers may never heal, especially when a patient has under-controlled diabetes, which Gallegos clearly had. *See Gelok Dec.* at 4, Dkt. 21-3.

There is nothing in the record that indicates Grace did not provide timely and adequate treatment for Gallegos. Further, Gallegos has offered no evidence that Grace consciously disregarded a substantial risk of serious injury to Gallegos. *Toguchi*, 391 F.3d at 1061. Accordingly, Defendants' motion will be granted as to Grace.

## ORDER

**IT IS HEREBY ORDERED AS FOLLOWS:**

1.  Plaintiff's Motions to Compel Discovery (Dkts. 25, 26, 27, 28, 29) are

**DENIED**.

2. Plaintiff's Motion to Stay Summary Judgment (Dkt. 24) is **DENIED**.

3. Defendants' Motion for Summary Judgment (Dkt. 21) is **GRANTED.**

DATED: March 20, 2020

_____
B. Lynn Winmill
U.S. District Court Judge